**FOX ROTHSCHILD LLP**
**(formed in The Commonwealth Of Pennsylvania)**
2000 Market Street, Twentieth Floor
Philadelphia, PA 19103
(215) 299-2000 (phone)/(215) 299-6834 (fax)
Joshua T. Klein, Esquire (JK 8978)
Jason C. Manfrey, Esquire (JM 01175)
jklein@foxrothschild.com
jmanfrey@foxrothschild.com
*Proposed Attorneys for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INNOVASYSTEMS, INC,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-<br><br>Hon. _____ |

**DEBTOR'S MOTION FOR INTERIM AND FINAL**
**ORDERS PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, AND 552**
**AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001 FOR (A) ENTRY OF**
**AN INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH**
**COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION**
**LENDER AND (III) GRANTING RELATED RELIEF AND**
**(B) SCHEDULING AN INTERIM AND FURTHER HEARING**

InnovaSystems, Inc. (the "Debtor") the debtor and debtor-in-possession in the above captioned case, hereby files this motion (the "Motion") pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 552 of title 11 of the United States Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, for (A) entry of an interim order (i) authorizing the Debtor's use of cash which may comprise cash collateral, (ii) granting adequate protection to the interests of the Prepetition Lender (as defined below), and (iii) granting related relief and (B) scheduling a final hearing. In support of this Motion, the Debtor respectfully state as follows:

PH1 2911322v2 09/02/11

**Jurisdiction**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought herein is sections 105, 361, 362, 363, and 554 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

**Background**

**A.    Company**

4. On September 2, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business and property as a debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.

5. The factual background relating to the commencement of this chapter 11 case is set forth in detail in the *Affidavit of John J. Waters, President of the Debtor In Support of First-Day Motions* (the "Affidavit"), which is incorporated herein.

6. As set forth more fully in the Affidavit, the Debtor is a corporation organized in the State of New Jersey and is a technology engineering company. The Debtor's clients are academic, biotechnology, chemical, environmental, food, government, petrochemical and pharmaceutical companies and laboratories that have the goals of improving productivity, accuracy and reproducibility of laboratory results. The Debtor achieves these goals for its clients through the implementation of certain services including mechanical design and development,

2

electrical engineering, hardware and software development, machining; and assembly, testing and support.

7. The Debtor commenced this Chapter 11 case in order to obtain a breathing spell from creditors while it negotiates a restructuring of its debts, which will permit the Debtor to reorganize under Chapter 11.

**B.    Senior Prepetition Secured Debt**

**PNC Bank N.A.**

**The Debtor's Business & Events Leading to Bankruptcy**

8. Upon information and belief, on November 30, 2000, the Debtor and PNC Bank N.A. ("PNC" or the "Prepetition Lender") entered into a loan agreement for a revolving line of credit (the "First PNC Line"). The First PNC Line is secured by liens in favor of PNC on all of the Debtor's inventory, chattel paper, accounts, equipment, and general intangibles, whether any of the foregoing is now or acquired later; all accessions, attachments, tools, parts, supplies, increases, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; and all proceeds relating to any of the foregoing (including insurance, general intangibles, instruments, rents, monies, payments and other account proceeds) (the "Collateral"). As of the Petition Date, approximately $148,500 remained due and owing on the First PNC Line.

9. Upon information and belief, on December 13, 2000, the Debtor and PNC entered into a second loan agreement for a revolving line of credit (the "Second PNC Line"). Upon information and belief, in December of 2009, the Debtor and PNC entered into a promissory note agreement, modifying the Second PNC Line into a promissory note by and between the Debtor and PNC (the "Note" and collectively with the First PNC Line and the Second PNC Line, the

3

"PNC Loan Agreements", together with all documents, agreements and instruments now or hereafter evidencing, securing, guaranteeing, amending and/or restating, executed in connection with or relating in any way to the Prepetition Loan Agreements, collectively the "Prepetition Loan Documents"). The Note is secured by liens in favor of PNC on all of the Debtor's Collateral. As of the Petition Date, approximately $19,000.00 remained due and owing on the Note.

10. PNC's Collateral, includes its liens on cash collateral (the "Cash Collateral") the Debtor receives from various sources, including proceeds of accounts receivable.

### Relief Requested

11. The Debtor seeks entry of an interim order (the "Interim Order"), attached hereto as Exhibit A (i) authorizing the use of Cash Collateral, (ii) providing adequate protection of the interest of the Prepetition Lender, and (iii) granting related relief, and the scheduling of a final hearing in respect of same. Specifically, the Debtor proposes that the Court authorize the use of Cash Collateral on an interim basis in accordance with the proposed Interim Order attached hereto as Exhibit A and incorporated herein.

### Basis for Relief

**A. The Proposed Use Of Cash Collateral Is Appropriate And Should Be Authorized**

12. Section 363(c)(2) of the Bankruptcy Code sets forth the requirements for a debtor's proposed use of cash collateral, and provides, in pertinent part that:

> [t]he trustee may not use, sell, or lease cash collateral … unless –
> (A) each entity that has an interest in such cash collateral consents;
> or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

4

11 U.S.C. § 363(c)(2).[1] Section 105(a) of the Bankruptcy Code also allows that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Debtor respectfully submits that the proposed use of Cash Collateral is necessary to preserve its assets and property (including the Prepetition Collateral) during this case, and will avoid immediate and irreparable harm to the Debtor's estate and creditors, including the Prepetition Lender. Such use prejudices no one; it affirmatively and directly benefits the estate and creditors by enhancing the prospects of a successful outcome of this case.

### B. The Proposed Adequate Protection Is Appropriate

13. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee [or debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (1) "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in the property;" (2) "additional or replacement lien[s] to the extent that the use [of cash collateral] will cause a decrease in the value of such entity's interest in the property;" and (3) "granting such other relief … as results in the realization by the entity of the indubitable equivalent of such entity's interest in the property."

---

[1] Section 363(a) of the Bankruptcy Code defines "cash collateral" as:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title[.]

5

11 U.S.C. § 361. Bankruptcy courts have broad flexibility under section 361 in deciding what constitutes adequate protection:

> This section specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept.

H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977); *see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),* 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.").

14. The principle purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such interest. *See In re Swedeland Dev. Group, Inc.,* 16 F.3d at 564 ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (quoting *In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987)); *accord In re DeSardi,* 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006) ("The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case."); *In re Hollins,* 185 B.R. 523, 528 (Bankr. N.D. Tex. 1995) ("Adequate protection seeks to protect a creditor from an [sic] decline in the value of its collateral . . . .").

15. However, the Debtor is mindful that the "Court is not obligated to protect the creditor better than it did itself when making the loan and obtaining security." *In re Heatron, Inc.,* 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980). The interest to be protected by virtue of the adequate protection requirement is the lesser of the amount of the debt or the value of assets

---

11 U.S.C. § 363(a).

securing the debt as of the Petition Date. *See In re Alyucan Interstate Corp.,* 12 B.R. 803, 808 (Bankr. D. Utah 1981) ("[T]he 'interest in property' entitled to protection is not measured by the amount of the debt but by the value of the lien.").

### (i) The Budgetary Constraints on the Trustee's Use of Cash Collateral are Intended to Adequately Protect the Interests of the Prepetition Lender

16. The principal adequate protection for the Prepetition Lender is the use of Cash Collateral in accordance with the Budget (subject to permitted variances).[2] Essentially, the Budget provides for expenditures to fund the Debtor's reduced, but necessary and essential, day-to-day operations. Such expenditures include payments required to maintain payments to vendors, payments to suppliers of components and fabrication materials necessary for the Debtor's products, and payments to maintain the Prepetition Lender's other non-cash collateral, which can rapidly lose value if the Debtor's operations are not maintained.

17. Courts have routinely held that adequate protection may be demonstrated by a showing that the going concern value of the debtor, or the value of the lender's collateral, is preserved by the debtor's continuing operations and use of cash collateral. *See, e.g., In re JKJ Chevrolet, Inc.,* 117 F.3d 1413, 1413 (4th Cir. 1997) (allowing use of cash collateral to operate automobile dealership as long as continued operations maintained the value of the business); *In re Snowshoe Co., Inc.,* 789 F.2d 1085, 1087 (4th Cir. 1986) (allowing use of cash collateral to operate ski resorts where trustee reported that ski resort would lose 50% to 90% of its fair market value if it ceased operations); *In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 B.R. 53, 56-57 (Bankr. N.D.N.Y. 1992) (finding secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on collateral

---

[2] Due to the urgent nature of this filing, the Budget was not completed prior to the submission of the Motion and this Affidavit, but the Proposed Budget will be filed with the Court prior to any hearing on the First Day Motions.

property); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor entitled to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral).

18.     Here, the proposed cash expenditures are necessary to preserve and maintain the value of the prepetition collateral and the interests therein of the Prepetition Lender.  Moreover, use of the Cash Collateral in the manner and for the purposes proposed will maintain the overall value of the Debtor's ongoing enterprise and enhance the chances of a successful outcome for this case.  If the Debtor is precluded from making expenditures necessary to maintain the Debtor's assets, or if the Debtor is forced to effect a "fire-sale" liquidation of its assets, the Prepetition Lender, indeed all creditors — secured and unsecured — will be harmed. *See*, *e.g.*, *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citing *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 376, 386-89 (Bankr. E.D. Pa. 1987), *aff'd*, 75 B.R. 819 (E.D. Pa. 1987), and *In re Alyucan Interstate Corp.*, 12 B.R. at 809-12)).

    **(ii)**     **The Interim Order Provides for the Payment of (a) Current Interest on the First PNC Line to the Prepetition Lender; and (b) Principal and Interest on the Note to the Prepetition Lender**

19.     In addition, to expenditures necessary to maintain the Debtor's assets and support of its implemented software systems and hardware, the Budget also provides for interest payments to PNC for the First PNC Line and principal and interest payments to PNC for the Note.  The periodic cash payment of current interest is clearly a generally accepted form of adequate protection. *See* 11 U.S.C. § 361(1); *see also In re Swedeland Dev. Group, Inc.*, 16 F.3d at 5-6 (observing that cash payments constitute a form of adequate protection under section 361

8

of the Bankruptcy Code); *Matter of Crockett*, 3 B.R. 365, 368 (Bankr. N.D. Ill. 1980) (payment of interest accepted as a form of adequate protection).

      **a.**    **The Interim Order Requires the Debtor to Provide Continued Financial Reporting to the Prepetition Lender Substantially in <u>Accordance with the Prepetition Loan Documents</u>**

    20. Continued financial and other reporting as required by the Interim Order is often a component of the adequate protection provided to secured creditors. *See*, *e.g.*, *In re 5877 Poplar*, L.P., 268 B.R. 140, 150 (Bankr. W.D. Tenn. 2001) (finding adequate protection for use of cash collateral where, among other things, the debtors agreed to provide operating reports to the lender and permit inspection of the premises upon lender's reasonable request). The Debtor proposes to continue the reporting required under the prepetition loans from the Prepetition Lender. In addition, there is additional reporting requirements for the Debtor set forth in paragraph 13 of the proposed Interim Order.

      **b.**    **The Prepetition Lender is Provided Replacement Liens and <u>Superpriority Claims</u>**

    21. The Interim Order also provides adequate protection to the Prepetition Lender in the form of (i) replacement liens on and security interests in (the "<u>Adequate Protection Liens</u>") all of the Debtor's property and assets (whether existing on the Petition Date or acquired or arising thereafter), and proceeds thereof. (*see* 11 U.S.C. § 361(2) (providing for replacement liens as a form of adequate protection)); and (ii) allowed superpriority claims pursuant to section 507(b) of the Bankruptcy Code, senior to all other administrative claims, except as set forth below. Such adequate protection is commonplace. *See*, *e.g.*, *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing the debtor to replace a lien on cash with a lien on property likely to be worth five times as much); *In re Center Wholesale,*

*Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor).

22.     Here, the Prepetition Lender, in addition to retaining a lien on the proceeds of its respective Prepetition Collateral, is also being provided additional adequate protection in the form of Adequate Protection Liens on any other collateral which may be generated during these cases, including but not limited to, accounts receivable and proceeds thereof, as well as superpriority claims. *See*, *e.g.*, *In re O'Connor*, 808 F.2d at 1396-98 (allowing the debtor to replace a lien on cash with a lien on property likely to be worth five times as much); *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor).

**The Need for Immediate relief Pending a Final Hearing**

23.     Pursuant to Bankruptcy Rule 4001(b), a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after service of such motion. The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 14 day period and to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court (i) schedule an interim hearing to consider approval of the Debtor's use of Cash Collateral on an interim basis and (ii) authorize the Debtor pursuant to the terms of the Interim Order to use Cash Collateral in accordance with the Budget. If the Debtor is unable to obtain the immediate use of Cash Collateral, it will be required to curtail its operations substantially with a concomitant immediate and irreparable harm to the value of its business and estate.

**Notice**

24. Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel for Debtor's secured creditors (if known); (iii) the Debtor's secured creditors; (iv) the Debtor's 20 largest unsecured creditors; (v) the Prepetition Lender; and (vi) any party requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests the Court to (A) enter the Interim Order granting the relief requested herein, including (i) authorizing the Debtor's use of Cash Collateral pursuant to the terms of the Interim Order (including the Budget), (ii) finding that the interests of the Prepetition Lender is adequately protected, and (iii) granting related relief; (B) schedule a final hearing; and (C) grant to the Debtor such other and further relief as the Court deems just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
*Proposed Attorneys for the Debtor and Debtor In Possession*

  */s/ Joshua T. Klein*

Dated: September 2, 2011         Joshua T. Klein, Esquire