| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**ARIS J. KARALIS, ESQUIRE AK-4221**<br>**ROBERT W. SEITZER, ESQUIRE RS-1848**<br>**MASCHMEYER KARALIS P.C.**<br>**413 Route 70 East, Suite 300**<br>**Cherry Hill, NJ 08034**<br>**(856) 428-8400**<br>**Attorneys for the Debtor** | |
| **In re:**<br><br>**INNOVASYSTEMS, INC.**<br><br>**Debtor** | **CHAPTER 11**<br><br>**BANKRUPTCY NO. 11-36228(ABA)** |

**OBJECTION OF THE DEBTOR TO PROOF OF CLAIM NO. 13-1 FILED BY PROVERIS SCIENTIFIC CORPORATION**

Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, INNOVASYSTEMS, INC. (the "Debtor"), by and through its counsel, Maschmeyer Karalis P.C., hereby objects to the Proof of Claim filed by PROVERIS SCIENTIFIC CORPORATION ("Proveris"), docketed as Claim No. 13-1 in the amount of $2,393,571.12 (the "Proveris Claim"), and in support thereof, respectfully states as follows:

1. On September 2, 2011 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the District of New Jersey, Camden Vicinage.[1] See [NJ D. Entry No. 1].

[1] The Debtor states that the record from (i) the Mass District Court action (Case No. 05-124240) and (ii) the District of New Jersey Bankruptcy Case (Bankruptcy No. 11-36228), will be referred to herein by the Court's docket number as "[**Mass. D. Entry No(s).** __ ]" or "[**NJ D. Entry No(s).** __ ]", respectively.

2. Since the Petition Date, the Debtor has continued in the management and operation of its business and property in accordance with 11 U.S.C. §§ 1107(a) and 1108.

3. No trustee, examiner or creditors' committee has been appointed in the Debtor's bankruptcy case pursuant to 11 U.S.C. §§ 1102(a)(1) or 1104.

4. Pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure, January 25, 2012 was fixed as the bar date for filing proofs of claim against the Debtor.

5. On December 13, 2011, Proveris filed a proof of claim against the bankruptcy estate, docketed on the Official Claims Register as Claim No. 13-1, asserting an unsecured claim in the estimated amount of $2,393,571.12. A true and correct copy of the Proveris Claim is attached hereto as Exhibit "D-1" and made a part hereof.

6. According to Proveris, the dollar amount listed in the Proveris Claim is the amount of the sanction that should be imposed against the Debtor for violation of the permanent injunction entered in May 2007 by the United States District Court for the District of Massachusetts (the "Mass. District Court"). See, ¶¶ 9, 11, 13, 15 and 17-18, infra.

## PROCEDURAL BACKGROUND

### A. The Infringement Action

7. Prior to the filing of the bankruptcy petition, Proveris sued the instant Debtor for patent infringement in the United States District Court for the District of Massachusetts (the "Mass. District Court") claiming that the Debtor's Optical Spray Analyzer ("OSA") infringed upon Proveris' U.S. Patent No. 6,785,400 (the "'400 Patent"). See [Mass. D. Entry Nos. 1 and 27]. Claims 1 - 10 and 13 of the patent were alleged to be infringed. With respect to Claims 3 - 10 and 13, the Debtor limited its defense to the invalidity of the patent since an invalid patent cannot be infringed. [Id., at Entry Nos. 3 and 30].

8. During the infringement trial, the Mass. District Court struck the Debtor's invalidity expert, thus leaving the Debtor with no defense to present to the jury with respect to the infringement of Claims 3 - 10 and 13. After trial, the jury returned a verdict that Claims 1 and 2 were not infringed and that no claims were willfully infringed. [Id., at Entry No. 120]. The jury also decided that no damages had been proven with respect to any patent claim. [Id.]. The United States Court of Appeals for the Federal Circuit (the "Federal Circuit") affirmed the jury's decision in all respects. [Id., at Entry No. 160].

9. Thereafter, Proveris moved for a permanent injunction. [Id., at Entry Nos. 133-37]. By Order dated May 11, 2007, the Mass. District Court entered a permanent injunction against the OSA product. [Id., at Entry No. 150].

**B. <u>The Pre-Petition Contempt Proceedings</u>**

10. In response to the permanent injunction, the Debtor discontinued the OSA, and introduced a redesigned product known as the Aerosol Distribution Spray Analyzer ("ADSA"). During briefing on the Motion for Permanent Injunction, Proveris emphasized the requirement of the Preamble of Claim 3 of the '400 Patent that the inventive device was required to be able to analyze the captured image at a "predetermined point in time." Accordingly, the Debtor focused its redesign on avoiding violation of the permanent injunction by eliminating the user's ability to predetermine, before acquisition, which of the images would be acquired by the ADSA.

11. On March 3, 2010, Proveris filed a Motion for Contempt based upon the sale by the Debtor of the ADSA, claiming the ADSA infringed Claims 3 - 10 and 13 of the '400 Patent and therefore, violated the permanent injunction entered by the Mass. District Court. See [Mass. D. Entry Nos. 162-66]. After briefing, a hearing on the Motion for Contempt was conducted by the Mass. District Court and the motion was ultimately denied on April 21, 2010. Nevertheless,

the Mass. District Court ruled that the parties should brief the question of the construction of Claim 3 of the '400 Patent as part of an evaluation of the question of infringement, and set a briefing schedule and a date for a claim construction (i.e., Markman) hearing on May 21, 2010.

12. On the date scheduled for the Markman hearing, the Mass. District Court heard from the parties and ruled that a Markman hearing would not be held and that the claim would be construed to not contain any limitations based on the Preamble (*including the Preamble language regarding the capturing of the image at a predetermined point in time*). At the same time, the Mass. District Court ruled that the validity of Claim 3 had been decided and that the validity of Claim 3 could not be challenged in connection with the contempt proceedings.

13. On June 2, 2010, Proveris filed a Motion for Summary Judgment of Contempt, and on June 11, 2010, the Debtor opposed the Motion for Summary Judgment and filed a Cross-Motion for Partial Summary Judgment. [Id., at Entry Nos. 187-90, 192-96]. The Mass. District Court heard oral argument on the summary judgment motions on June 16, 2010, and granted summary judgment of contempt and entered a contempt order on September 21, 2010. [Id., at Entry Nos. 199, 208]. A hearing on sanctions was scheduled for September 5, 2011.

## C. The Bankruptcy Filing and Relief from the Stay

14. As indicated above, on September 2, 2011, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in the District of New Jersey, which stayed the proceedings pending before the Mass. District Court. See [NJ D. Entry No. 1].

15. On December 6, 2011, Proveris filed with the Bankruptcy Court a Motion for Relief from automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow the Mass. District Court to determine the sanctions that are the basis of the Proveris Claim. [Id., at Entry No. 76].

16. By Order dated January 10, 2012, Proveris was granted relief from the automatic

stay to allow the Mass. District Court to liquidate its claim for sanctions against the Debtor. [Id., at Entry No. 104].

**D. The Post-Petition Contempt Proceedings**

17. On September 4 and 5, 2012, the Mass. District Court held a two-day bench trial to determine the appropriate contempt sanctions and at the conclusion of the trial, awarded damages in the amount of $878,205, as a disgorgement of profits from the sale of the ADSA. See [Mass. D. Entry No. 266].

18. The Mass. District Court also awarded Proveris its attorneys' fees in the amount of $212,972.91 and costs of $22,103.37. [Id., at Entry No. 300].

**E. The Appeal of the Mass. District Court Award**

19. The Debtor appealed the finding of contempt and the sanctions award to the United States Court of Appeals for the Federal Circuit (the "Federal Circuit"). See [Mass D. Entry No. 303]. The Federal Circuit entered judgment on January 13, 2014, vacating the finding of contempt and the sanctions, and remanding the matter to the Mass. District Court for further proceedings. See, Proveris Sci. Corp. v. Innovasystems, Inc., 739 F.3d 1369-75 (Fed. Cir. 2014).

20. The Debtor's appeal included arguments that neither of the two essential requirements for a finding of contempt had been properly found by the Mass. District Court. Specifically, a finding of contempt requires an initial analysis of whether the product accused of contempt (*here the ADSA*) is more than colorably different than the enjoined product (*here the OSA*). If there is more than a colorable difference, then a contempt finding is not possible and the analysis is completed. However, if there is a finding that there is not more than a colorable difference, then the court must engage in the second prong of the analysis, that is, whether the

product accused of contempt infringes upon the properly construed claims.

21. The Federal Circuit found that the initial prong of the contempt analysis had been properly determined in that there were not more than colorable differences between the OSA and ADSA. Id., at 1371. However, the Federal Circuit held that the contempt ruling was nevertheless improper because the Mass. District Court improperly found the ADSA to be an infringement of the patent claims. Id., at 1372-73. This error stemmed from the failure of the Mass. District Court to consider the Preamble of claim 3 to be a limitation on that claim, and thus the finding of contempt and the sanctions were vacated and the case remanded to the lower court to consider the question of infringement using a proper construction of the claim considering that the Preamble was a limitation of the claim. Id., at 1372-74.

22. Whether or not the ADSA is more than colorably different than OSA is irrelevant to the determination that was remanded to the Mass. District Court. As indicated above, the Federal Circuit issued its mandate on January 13, 2014.

## F. Re-Examination of the Proveris Patent

23. The Debtor filed an Inter Partes Request for Re-Examination of the '400 Patent on March 18, 2011 in order to defend against the various allegations of infringement raised by the '400 Patent assignee – Proveris. On June 29, 2011, the United States Patent and Trademark Office ("PTO") issued an Order for Re-Examination of the '400 Patent (the "PTO Order"), indicating that nearly 60 separate and distinct grounds for rejecting the claims as invalid exist with regard to the claims at issue in the '400 Patent. The PTO Order adopted 58 out of 59 of Debtor's asserted bases for rejecting Claims 3 - 13 of the '400 Patent as being invalid, including each and every rejection of independent Claim 3 of the '400 Patent (*the sole independent claim at issue*) as proposed in Debtor's Inter Partes Re-Examination Request.

24. In response to the PTO Order, Proveris submitted several hundred pages of documents with both an Amendment and a Petition filed on August 29, 2011. The amendment added new Claims 14 and 15 to the Re-Examination, and contained no amendments to Claims 3 - 13. Proveris argued that Claims 3 - 13 were patentable without amendment thereto despite the many rejections each of the claims faced.

25. In response to the Amendment, the PTO issued an "Action Closing Prosecution" on December 10, 2011 in which all rejections of Claims 3 - 13 were upheld, new rejections of new Claims 14 and 15 were added/adopted, and Proveris' arguments were rebutted in total. Subsequently, the PTO issued a "Right of Appeal Notice" ("RAN") confirming the same rejections and arguments.

26. In response to the August 29, 2011 Petition filed by Proveris, the PTO issued a decision on February 27, 2012 dismissing the Proveris' Petition. However, the PTO sua sponte decided that three of the nine prior art references cited by Debtor are not available for use in certain types of rejections under Inter Partes Re-Examination procedural rules.

27. The PTO then issued a second RAN on April 27, 2012, that included six separate "anticipation" rejections of independent Claim 3 of the '400 Patent. The PTO also rejected all of the claims dependent from Claim 3 based on multiple grounds, including anticipation, obviousness, and indefiniteness.

28. Proveris filed a Notice of Appeal on May 29, 2012 to the United States Patent Trial and Appeal Board ("PTAB"). Both parties filed timely briefs and conducted an Oral Hearing in October 2013. The PTAB decided the case on January 31, 2014, affirming the invalidity of all pending claims. With respect to specific grounds of invalidity presented by the Examiner in his rejections, the PTAB affirmed all but three of the many rejections - including a rejection of dependent Claim 5 based on prior art, and a rejection of Claims 14 and 15 based on

the argument that the claims were "indefinite." Regardless, the PTAB affirmed rejections of Claims 5, 14, and 15 on other separate grounds. As a result, the PTAB concluded that none of the challenged claims (i.e., 3 - 15) were patentable.

29. On February 28, 2014, Proveris filed a Request for Rehearing to reconsider its decision that none of the challenged claims is patentable. Proveris argued that the PTAB's decision was erroneous because it included a claim interpretation that was inconsistent with the decision of the Federal Circuit ruling that the Preamble was a limitation on the scope of Claim 3.

30. On March 28, 2014, the Debtor filed its Response to the Request for Rehearing. In so doing, the Debtor argued, in part, that the PTAB was aware of and considered the Federal Circuit's decision prior to issuing its own decision, that the PTAB had clearly considered the Preamble and interpreted the claim in a manner consistent with the Federal Circuit's decision and therefore, the Request for Rehearing should be denied.[2]

31. The PTAB has not acted upon Proveris' Request for Rehearing. Because of the time that has elapsed since that request was filed, Debtor's counsel contacted the administrative personnel at the PTAB and requested a report on the status of the request. Debtor's counsel has been informed that because of one or more administrative docketing errors at the PTAB, the request has not yet even been assigned to a panel for reconsideration. Debtor's counsel has been informed and believes that this situation is now being rectified at the PTAB and as a result, the Debtor believes that a decision denying the Request for Rehearing will be issued in due course.

32. If the request for rehearing is denied as expected, Proveris will then have a right

[2] Rather than file an appeal before the Federal Circuit, on February 28, 2014 (*on virtually the last day for taking such action*), Proveris filed a Request for Rehearing at the PTAB, arguing that the PTAB did not consider the Federal Circuit's decision on Proveris Sci. Corp. v. Innovasystems, Inc., 739 F.3d 1367 (Fed. Cir. 2014), regarding the contempt judgment. However, Proveris itself provided the PTAB with a copy of the Federal Circuit's decision before the PTAB issued its ruling. Thus, Proveris' premise for seeking reconsideration is on its face baseless, and the more likely reason for seeking reconsideration is to further drag out the proceeding and to delay the inevitable formal cancellation of the patent claims. See [Mass. D. Entry No. 365, at pp. 4-5].

to appeal the PTAB decision rejecting claims 3 - 15 to the Federal Circuit within 63 days of the decision on the rehearing request.

33. Proveris has asserted that if the PTAB denies its Request for Rehearing it will file an appeal with the Federal Circuit. However, based on the large number of independent grounds for finding the claims invalid, including the large number of rejections based on the lack of novelty in the claimed subject matter and the number of levels of review to which this case has already been subjected to, an appeal is very unlikely to be successful.[3] This being so, it is important to reiterate at this time that Claims 1 and 2 are not at issue because the Debtor was determined by a jury in Mass. District Court to not infringe these claims.

34. Assuming an appeal is filed after the Request for Rehearing is denied, the Federal Circuit simply needs to affirm on at least one ground the decision by the PTAB finding the claims invalid in order for the PTO to formally cancel Claims 3 - 15 of the '400 Patent. Proveris shall then have no claim in the Debtor's bankruptcy case.

35. In the alternative, if either the rehearing is granted by the PTAB or, assuming an appeal is filed after the Request for Rehearing is denied and the Federal Circuit reverses all grounds of the PTAB's decision rejecting independent Claim 3 and dependent Claims 4 - 15, the Mass. District Court will then be expected to schedule a hearing on whether the ADSA infringes the '400 Patent based on a claim construction which considers the Preamble to be a limitation on Claim 3.

36. Proveris asserts that in such event, the ADSA sales the Debtor made post-petition would again be at issue and that the potential sanctions that could result from a jury finding that

[3] As a matter of fact, the statistics from the Federal Circuit website for 2013 indicates that the PTO is reversed by the Federal Circuit only eight (8%) percent of the time. See [Mass. D. Entry No. 346, at p. 4]. At the same time, Claim 3 has been rejected for lack of novelty over six (6) separate items of prior art. [Id.]. Thus, in order for Proveris to successfully reverse the rejection of independent Claim 3, it would be necessary for the Federal Circuit to find that the PTAB was wrong about all 6 of the items of prior art. [Id., at pp. 4-5]. This outcome is so unlikely that it can be discounted completely. [Id., at p. 5].

those sales infringe under 35 U.S.C. § 271(f) would amount to $635,653.40, plus attorneys' fees and costs, which would be in addition to the more than $1.1 million in sanctions for the pre-petition contempt asserted in the Proveris Claim. The Debtor disputes this assertion by Proveris.

37. Proveris also asserts that the PTAB erred in its decision finding the claims of the '400 Patent invalid by failing to consider the Preamble of Claim 3 as a limitation, as required by the Federal Circuit's decision and that the PTAB should confirm the claim. Assuming confirmation of Claim 3, Proveris contends that the Mass. District Court would undoubtedly lift the stay to continue the contempt action. The Debtor also disputes this assertion by Proveris.

## G. Further Mass. District Court Proceedings

38. Following the PTAB's decision, the Debtor filed in the Mass. District Court a Motion to Alter Judgment and Terminate Injunction pursuant to Fed. R. Civ. P. 60. See [Mass. D. Entry Nos. 346-48]. At a hearing on February 6, 2014, the Mass. District Court upon Debtor's motion ruled from the bench that it would dissolve the injunction and on February 7, 2014, the Mass. District Court issued a minute order effectively dissolving the permanent injunction (hereinafter, the "Mass. 02/07/2014 Order"). [Id., at Entry Nos. 349 and 352]. A few weeks later, on March 12, 2014, the Mass. District Court issued an electronic order setting a briefing schedule on the issue of whether Proveris has any viable legal theory to seek sanctions for contempt based on an injunction that was issued based on an invalid patent.

39. In light of the Mass. 02/07/2014 Order, Proveris filed a Motion for Contempt Action and to Reinstate Permanent Injunction. [Id., at Entry Nos. 363-64]. On April 16, 2014, the Debtor timely filed its brief arguing against Proveris' motion and in favor of the proposition that no viable legal theory of contempt could exist since, inter alia, the claims are now deemed as a matter of law to be void ab initio. [Id., at Entry Nos. 365-67].

40. Consequently, in an order dated April 17, 2014 (the "Mass. 04/17/2014 Order"), the Mass. District Court opined as follows:

> " . . . [a]s the case currently stands, ***the Federal Circuit has vacated the contempt judgment against Innova, and Judge Young dissolved the permanent injunction against Innova in light of the PTO and PTAB's finding that claims 3-13 of the '400 patent are invalid.*** Proveris's request for rehearing is pending at the PTAB, and Proveris has indicated that if the rehearing is not successful, it intends to appeal the invalidity ruling to the Federal Circuit. ***If the claims of the '400 patent are ultimately found to be invalid, they are invalid <u>ab initio</u> and cannot be the basis of an enforceable judgment or injunction.*** The Court sees no reason for it and the parties to engage in expensive and time-consuming parallel proceedings that may very well be nullified by the result of the reexamination process. Thus, the Court will adopt Innova's suggestion to stay this case until the reexamination process reaches its final conclusion. The parties are to notify the Court of any PTAB or Federal Circuit decision within 14 days of issuance. If any relevant claims survive, Proveris may seek to renew this motion after the conclusion of reexamination. The clerk shall administrative close this case . . ." (***emphasis added***)

<u>See</u> [Mass. D. Entry No. 368]. At the present time, the time-limitations period for Proveris to file an appeal of the Mass. 02/07/2014 Order or the Mass. 04/17/2014 Order has elapsed.

## <u>BASIS OF THE INSTANT OBJECTION</u>

41. As stated above, on January 13, 2014, the Federal Circuit vacated the contempt order and the sanctions awarded, and remanded the matter to the Mass. District Court for further proceedings. <u>See</u>, <u>Proveris Sci. Corp.</u>, <u>supra</u>, 739 F.3d at 1369 and 1375. <u>See also</u>, ¶ 19, <u>supra</u>.

42. In addition, on January 31, 2014, the PTAB affirmed the PTO's findings that Claims 3 - 13 of the '400 Patent were invalid. <u>See</u>, ¶¶ 23, 25-28, <u>supra</u>.

43. In light of these findings, the Mass. 02/07/2014 Order dissolved the permanent injunction in order to prevent the inequitable enforcement of an injunction based on patent claims that were no longer valid. <u>See</u> [Mass. D. Entry Nos. 349 and 352]. <u>See also</u>, ¶ 38, <u>supra</u>.

44. Thereafter, the Mass. 04/17/2014 Order opined that if the claims at issue are

"found to be invalid, they are invalid ab initio and cannot be the basis of an enforceable judgment or injunction." See [Mass. D. Entry No. 368]. See also, ¶ 40, supra.

45. As reflected by these decisions, the patent claims at issue here – *the same patent claims upon which the Proveris Claim is based* – have been adjudicated to be invalid and therefore, these claims are fixed at $0.00.

46. In light of these findings, it is important to note that once an outstanding claim has been adjudicated, resolved, liquidated or fixed in another forum, that determination is conclusive and binding for all purposes. The reasoning behind this conclusion is simple. The doctrine of collateral estoppel, now commonly referred to as issue preclusion, precludes the re-litigation of issues that have been adjudicated in a prior proceeding. See, e.g., In re Docteroff, 133 F.3d 210, 214 (3rd Cir. 1997). See also, In re LoGiudice, 2013 U.S. Dist. LEXIS 175184, at *8 (D.N.J. Dec. 12, 2013), appeal dismissed by, 2014 U.S. Dist. LEXIS 6677 (D.N.J. Jan. 16, 2014); In re Hill, 495 B.R. 646, 667 (Bankr. D.N.J. 2013). The basic premise of the doctrine of collateral estoppel is that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." See, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 336 FN 23, 99 S.Ct. 645, 654 FN 23, 58 L. Ed. 2d 552 (1979).

47. It is important to also note that the decisions identified above – (i) the January 13, 2014 judgment of the Federal Circuit; (ii) the January 31, 2014 decision of the PTAB; and (iii) the Mass. 02/07/2014 Order and the Mass. 04/17/2014 Order – were rendered by two federal courts and one federal agency.[4] Therefore, federal principles of collateral estoppel must be

[4] Courts have long held that where an agency acts in a judicial capacity and resolves disputes properly before it, the agency's findings may be given preclusive effect as long as the procedures utilized by the agency do not prevent the party against whom estoppel will be applied from having a fair opportunity to present its case. See, e.g., EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc., 746 F.2d 375, 377-78 (7th Cir. 1984). There is no question that the PTO and the PTAB acted in a judicial capacity. Both Proveris and the Debtor were represented by attorneys before the PTO and the PTAB; both presented evidence and submitted briefs. Moreover, Proveris sought and obtained judicial review of the PTO's conclusions.

applied. See, e.g., Hailey v. City of Camden, 650 F. Supp. 2d 349, 354 (D.N.J. 2009). See also, Peloro v. United States, 488 F.3d 163, 175 FN 11 (3rd Cir. 2007) citing Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 145 (3rd Cir. 1999), cert. denied, 528 U.S. 878, 120 S. Ct. 188, 145 L. Ed. 2d 158 (1999). Under federal law, for collateral estoppel to apply:

> " . . . (1) ***the issue sought to be precluded must be the same as an issue in the prior action;*** (2) ***the issue must have been actually litigated in the prior action;*** (3) ***the issue must have been determined by a valid final judgment;*** and, (4) ***determination of the issue must have been essential to the judgment in the prior action*** . . ." (***emphasis added***)

See, In re Chatkin, 465 B.R. 54, 64-65 (Bankr. W.D. Pa. 2012) citing Docteroff, supra, 133 F.3d at 214. See also, First Commonwealth Bank v. Fresh Harvest River, LLC, 2014 U.S. Dist. LEXIS 26569, at *20 (W.D. Pa. Mar. 3, 2014); GE Bus. Fin. Servs. v. Grove St. Realty Urban Renewal, L.L.C., 2011 U.S. Dist. LEXIS 117042, at *9 (D.N.J. Oct. 11, 2011).

48. Applying these requirements, it is clear that Proveris is collaterally estopped at this time from arguing that the patent claims at issue here – *the same patent claims upon which the Proveris Claim is based* – are valid and therefore, Proveris is ultimately precluded from arguing that the Proveris Claim has not been fixed at $0.00. Once again, the reasoning behind this conclusion is relatively simple. These arguments would specifically involve the same issues already raised, and actually litigated and adjudicated in the prior decisions identified above, and which were essential to the adjudications ultimately rendered in those decisions.

49. As for any contention that any of those decisions identified above is not final because an appeal has been taken and that appeal is pending, that contention is dubious at best. Exhaustion of appellate remedies is not a requirement of collateral estoppel, and a final judgment has preclusive effect even though it is pending on appeal. See, Kadish v. Kmart Corp., 2005 U.S. Dist. LEXIS 28067, at *7 (N.D. Ill. Nov. 14, 2005). See also, Stelmokas v. Madson, 2011 U.S. Dist. LEXIS 114782, at *4 (N.D. Ill. Oct. 5, 2011) citing Prymer v. Ogden, 29 F.3d 1208,

1213 FN 2 (7th Cir. 1994), cert. denied, 513 U.S. 1057, 115 S. Ct. 665, 130 L. Ed. 2d 599 (1994) (*concluding that the judgment issued by the Bankruptcy Court was "final for collateral estoppel purposes, even though an appeal of the judgment in that case [wa]s pending"*); Cemex, Inc. v. Indus. Contr. & Erecting, Inc., 2006 U.S. Dist. LEXIS 43115, at *11-*12 (W.D. Pa. June 26, 2006), aff'd by, 254 Fed. Appx. 148, 2007 U.S. App. LEXIS 26601 (3rd Cir. Pa. Nov. 16, 2007) quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 Comment (f) (*acknowledging that "comment (f) to section 13 provides that '[t]he better view is that a judgment otherwise final remains so despite the taking of an appeal'"*); Erickson v. Horing, 2001 U.S. Dist. LEXIS 24384, at *27 (D. Minn. Sept. 21, 2001) quoting John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 563 (8th Cir. 1990), cert. denied, 500 U.S. 905, 111 S. Ct. 1683, 114 L. Ed. 2d 78 (1991) (*noting that "issue preclusion can apply in the absence of an appealable final judgment" and that "[a]s numerous courts have found . . ., 'finality for purposes of appeal . . . is not necessarily the finality that is required for issue preclusion purposes'"*); Cohen v. Bucci, 103 B.R. 927, 931 (N.D. Ill. 1989) (*recognizing that "[t]he pendency of an appeal does not suspend the finality of a judgment for purposes of collateral estoppel"*); McLendon v. Continental Group, Inc., 660 F. Supp. 1553, 1562 (D.N.J. 1987) citing 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4433, at 308 (1980) (*indicating that "the fact that [a party] may appeal the Third Circuit's ruling to the Supreme Court does not render the judgment non-final" and that "the 'established rule' in the federal courts is that a final judgment retains all of its preclusive effect pending appeal"*). Accordingly, the fact that an appeal has been taken and is pending, as is the case here, at no time divests a judgment of its finality.

50. For the foregoing reasons, the Debtor requests that this Honorable Court apply the doctrine of collateral estoppel to the prior adjudications of (i) the Federal Circuit, (ii) the Mass.

District Court, and (iii) the PTAB in connection with the Proveris Claim as conclusive and binding.

**WHEREFORE,** the Debtor respectfully requests that this Court enters an order sustaining this objection, disallowing the Proveris Claim in its entirety and for such other and further relief as this Honorable Court deems just and proper.

**Respectfully submitted,**

**MASCHMEYER KARALIS P.C.**

By: /s/ *Aris J. Karalis*
ARIS J. KARALIS
ROBERT W. SEITZER
FRANK S. MARINAS
1415 Route 70 East, Suite 306
Cherry Hill, NJ 08034
Attorneys for the Debtor

Dated: October 3, 2014