**NOT FOR PUBLICATION**

Order Filed on December 18, 2014
by Clerk
U.S. Bankruptcy Court
District of New Jersey

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

| In Re:<br><br>Innovasystems, Inc.,<br><br><br>Debtor. | Case No.:	11-36228-ABA<br><br>Chapter:	11<br><br>Hearing Date:	November 3, 2014<br><br>Judge:	Altenburg |
|---|---|

**MEMORANDUM DECISION**

**DATED: December 18, 2014**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

I. **PROCEDURAL BACKGROUND**

This matter was initially addressed on September 22, 2014 at the hearing held on the Amended Disclosure Statement of the Debtor Innovasystems, Inc. ("Innova" or "Debtor") and the objections thereto by Proveris Scientific Corporation ("Proveris"). At that hearing, the court raised the issue of whether Proveris's claim had been liquidated by the Massachusetts District Court and/or whether the claim needed to be allowed or disallowed in this court. The Amended Disclosure Statement hearing was rescheduled to October 15, 2014 to allow the parties to submit their positions. The parties submitted memoranda, Docs. 490 and 492 on the court's Docket, to address the issues raised (collectively, the "Memoranda"). In addition, Innova filed an *Objection to Claim 13 Filed by Innovasystems*, *Inc.*, Doc. 491 on the court's Docket (the "Objection"), seeking to object to the timely filed claim of Proveris. Naturally, Proveris filed opposition to the Objection and a *Cross-Motion for Temporary Allowance of Claim Pursuant to Fed. R. Bankr .P. 3018(a)*, Doc. 494 on the court's Docket (the "Cross-Motion"). Innova filed a Response to the Cross-Motion, Doc. 496 on the court's Docket. The Objection and Cross-Motion were scheduled to be heard on November 3, 2014.

On the return date of October 15, 2014 for the Amended Disclosure Statement, it was determined that in light of the Objection and Cross-Motion, all matters would be consolidated and heard on November 3, 2014 (the "November 3 Hearing").

The court conducted the November 3 Hearing. It was agreed that the issues raised in the Memoranda were merged into the Objection and Cross-Motion. Present at that hearing for Innova was its bankruptcy counsel, as well as its state court patent infringement counsel. Also present was bankruptcy counsel for Proveris, as well as its general counsel who was intimately familiar with the state court patent infringement matters.

After the November 3 Hearing, the PTAB issued its final Decision on Rehearing denying Proveris' Request for Rehearing finding Proveris's arguments unpersuasive. *See,* Doc. 506 on the court's Docket. The decision was filed with this court by counsel to Innova. In light of the decision of the PTAB, the court requested that counsel to Proveris provide a response explaining what affect, if any, did the decision have on this court's determination of the questions presented. *See,* Doc. 507 on the court's Docket. Counsel to Proveris timely filed its response. *See,* Doc. 511 on the court's Docket.

## II. FINDINGS OF FACT

As no affidavits were filed and no testimony was offered, the court relies on the Memoranda, Objection, Cross-Motion and related documents, and the arguments of all counsel at the November 3 Hearing in understanding the relevant facts for the resolution of the matters. Except where noted, the following are the relevant undisputed facts as determined from the submissions and arguments of counsel:

### A. The Initial Massachusetts District Court Action

Prior to the filing of the bankruptcy petition, Proveris sued Innova for patent infringement in the United States District Court for the District of Massachusetts (the "Mass. District Court") claiming that Innova's Optical Spray Analyzer ("OSA") infringed upon Proveris's U.S. Patent No. 6,785,400 (the "'400 Patent").

> At trial, the district court granted [Judgment as a Matter of Law] in favor of Proveris with respect to infringement of claims 3–10 and 13 of the '400 patent. Thus, as to claims 3–10 and 13, the court informed the jury that there was "[n]o dispute about infringement as to those claims." At trial, the district court also excluded certain expert testimony proffered by Innova relating to its affirmative defenses that claims 1, 2, and 9 of the '400 patent are invalid by reason of obviousness and that claims 3–8 and 10 and 13 of the patent are invalid as anticipated by a single prior art reference. As a result, the court granted [Judgment as a Matter of Law] in favor of Proveris on Innova's invalidity defenses. Following trial, the jury found claims 1 and 2 of the '400 patent not infringed, and awarded no damages for infringement of claims 3–10 and 13. Thereafter, the district court entered final judgment of infringement and issued a permanent injunction barring Innova from infringement of the '400 patent.

*Proveris Scientific Corp. v. Innovasystems, Inc.,* 536 F.3d 1256, 1260 (Fed. Cir. 2008).

In response to the permanent injunction, Innova discontinued the OSA, and introduced a redesigned product known as the Aerosol Distribution Spray Analyzer ("ADSA"). In designing the ADSA, Innova alleges that it focused its redesign on avoiding violation of the permanent injunction. Notwithstanding, on March 3, 2010, Proveris filed a Motion for Contempt alleging that Innova violated the permanent injunction due to the sale of the ADSA by Innova as it infringed certain claims of the '400 Patent. After several hearings, Proveris filed a Motion for Summary Judgment of Contempt which Innova opposed. Innova also filed its own Cross-Motion for Partial Summary Judgment. The Mass. District Court heard oral argument and ultimately granted summary judgment of contempt and entered a contempt order on September 21, 2010 in favor of Proveris. A hearing on the award of sanctions was scheduled for September 5, 2011.

B. **The Bankruptcy Case**

On September 2, 2011, Innova filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of New Jersey, which stayed the proceedings pending before the Mass. District Court. On September 30, 2011, Innova filed a Schedule of Creditors Holding Unsecured Nonpriority Claims that listed Proveris as a creditor with a disputed, contingent claim valued at $0.00.

On December 6, 2011, Proveris filed a Motion for Relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow the Mass. District Court to determine the sanctions that are the basis of the Proveris Claim. By order dated January 10, 2012, Proveris was granted relief from the stay to allow the Mass. District Court to liquidate its claim for sanctions against Innova. Then again, on January 14, 2013, the bankruptcy court entered an order granting Proveris relief from the automatic stay to liquidate its claim in the Mass. District Court, including any appeals to the Federal Circuit related thereto. In addition, that order granted Proveris relief from the stay to pursue any and all claims of continuing infringement and/or contempt by Innova post-petition in any appropriate forum. *See* Doc. 281 on the court's Docket (the "1/14/13 Order"). Innova's counsel conceded at one point during the November 3 Hearing that the stay relief applied to "sister proceedings before the Patent and Trademark Office."

On December 13, 2011, Proveris filed a proof of claim with the bankruptcy court in the Debtor's bankruptcy case designated as Claim Number 13-1 on the Court's Claims Register (the "Proveris Claim"). The Proveris Claim was filed in the *estimated* amount of $2,393,571.12, which is the amount of the sanction that Proveris alleged should be imposed against Innova for violation of the permanent injunction entered in May 2007 by the Mass. District Court.

C. **The Contempt/Sanctions Proceedings**

With relief from stay granted, on September 4 and 5, 2012, the Mass. District Court conducted a bench trial to determine the appropriate contempt sanctions. At the conclusion of the trial, the court awarded damages in the amount of $878,205, as a disgorgement of profits from the sale of the ADSA. The Mass. District Court also awarded Proveris its attorneys' fees in the amount of $212,972.91 and costs of $22,103.37 (collectively, the "Sanctions"). The parties appealed the Mass. District Court's decision to the Federal Circuit.

On January 13, 2014, the Federal Circuit entered judgment, vacating the finding of contempt and the Sanctions by the Mass. District Court, and remanded the matter back to the Mass. District Court for further proceedings.

The current status of the Mass. District Court matter is set forth in Part E., below.

D. **Re-Examination of the Proveris Patent**

Also prior to the bankruptcy filing, Innova filed with the United States Patent and Trademark Office ("PTO") an Inter Partes Request for Re-Examination of the '400 Patent in order to defend against the various allegations of infringement raised by Proveris. The United States Patent and Trademark Office ("PTO") issued an Order for Re-Examination of the '400 Patent (the "PTO Order"). Innova indicated that nearly 60 separate and distinct grounds for rejecting the claims as invalid exist with regard to the claims at issue in the '400 Patent. The PTO Order adopted 58 out of 59 of Innova's asserted bases for rejecting Claims 3 – 13 of the '400 Patent as being invalid, including every rejection of independent Claim 3 of the '400 Patent.

In response to the PTO Order, Proveris submitted an Amendment and a Petition. The amendment added new Claims 14 and 15 to the Re-Examination, and contained no amendments to Claims 3 – 13. Proveris argued that Claims 3 – 13 were patentable without amendment thereto. After considering the Amendment, the PTO issued an "Action Closing Prosecution" in which all rejections of the previous claims were upheld, new rejections of the new claims were added/adopted, and Proveris's arguments were rebutted. As a result, the PTO issued a "Right of Appeal Notice" ("RAN") confirming the same rejections and arguments.

With regard to the Petition filed by Proveris, the PTO issued a decision on February 27, 2012 dismissing the Petition. However, the PTO *sua sponte* decided that three of the nine prior art references cited by Innova are not available for use in certain types of rejections under Inter Partes Re-Examination procedural rules. The PTO then issued a second RAN that included six separate "anticipation" rejections of one claim of the '400 Patent and rejected all of the claims dependent from Claim 3 based on multiple grounds.

Proveris filed a Notice of Appeal to the Patent Trial and Appeal Board ("PTAB"). Both parties filed timely briefs and participated in oral hearing in October 2013. On January 31, 2014, the PTAB decided the case and affirmed the invalidity of all pending claims. With respect to specific grounds of invalidity presented by the Examiner in his rejections, the PTAB affirmed all but three of the many rejections – including a rejection of dependent Claim 5 based on prior art, and a rejection of Claims 14 and 15 based on the argument that the claims were "indefinite." Regardless, the PTAB affirmed rejections of Claims 5, 14, and 15 on other grounds. As a result, the PTAB concluded that none of the challenged claims (i.e., 3 – 15) were patentable.

On February 28, 2014, Proveris filed a Request for Rehearing to reconsider the decision that none of the challenged claims are patentable. Proveris argued that the PTAB's decision was erroneous because it included a claim interpretation that was inconsistent with a decision of the Federal Circuit. Innova filed its Response to the Request for Rehearing and argued, in part, that the PTAB was aware of and considered the Federal Circuit's decision prior to issuing its own decision, and considered all items and interpreted the claim in a manner consistent with the Federal Circuit's decision. Subsequent to the November 3 Hearing, in November 2014, the PTAB issued its final Decision on Rehearing denying Proveris' Request for Rehearing finding Proveris's arguments unpersuasive. *See,* Doc. 506 on the court's Docket.

As a result of the PTAB's denial, both parties agree that Proveris will have a right to appeal the PTAB decision to the Federal Circuit. Proveris has stated that the reexamination proceeding will not be complete until all appeals are exhausted. *See,* Doc. 511 on the court's Docket. The court understands that Proveris will appeal the recent PTAB decision.

### E.  **Further Massachusetts District Court Action**

Following the PTAB's initial decision on January 31, 2014, Innova filed a Motion to Alter Judgment and Terminate Injunction pursuant to Fed. R. Civ. P. 60 in the Mass. District Court. The Mass. District Court ruled that it would dissolve the injunction and on February 7, 2014 the Mass. District Court issued a minute order effectively dissolving the permanent injunction (the "Mass. 02/07/2014 Order"). Thereafter, the Mass. District Court issued an order setting a briefing schedule on the issue of whether Proveris has any viable legal theory to seek sanctions for contempt based on an injunction that was issued based on an invalid patent. In response, Proveris filed a Motion for Contempt Action and to Reinstate Permanent Injunction and Innova responded. On April 17, 2014, the Mass District Court entered an order (the "Mass. 04/17/2014 Order") and opined as follows:

> . . . [a]s the case currently stands, the Federal Circuit has vacated the contempt judgment against Innova, and Judge Young dissolved the permanent injunction against Innova in light of the PTO and the PTAB's finding that claims 3-13 of the '400 Patent are invalid. Proveris's request for rehearing is pending at the PTAB, and Proveris has indicated that if the rehearing is not successful, it intends to appeal the invalidity ruling to the Federal Circuit. If the claims of the '400 Patent are ultimately found to be invalid, they are invalid ab initio and cannot be the basis of an enforceable judgment of injunction. The Court sees no reason for it and the parties to engage in expensive and time-consuming parallel proceedings that may very well be nullified by the result of the reexamination process. Thus, the Court will adopt Innova's suggestion *to stay this case until the reexamination process reaches its final conclusion*. The parties are to notify the Court of any PTAB or Federal Circuit decision within 14 days of issuance. If any relevant claims survive, Proveris may seek to renew this motion after the conclusion of reexamination. The clerk shall administrative close this case . . .

(emphasis added)

At the present time, the time-limitations period for Proveris to file an appeal of the Mass. 02/07/2014 Order or the Mass. 04/17/2014 Order (as opposed to the recent PATB decision) has elapsed. Proveris stated at the November 3 Hearing that its decision not to appeal the orders was strategic in light of the pending reexamination proceeding and the Mass District Court's willingness to revisit the issue at the final conclusion of the reexamination process.

F. **The Objection and Cross-Motion**

The heart of Innova's Objection is that the Federal Circuit has vacated the contempt/sanctions order of the Mass District Court and since Proveris failed to appeal the Mass. 02/07/2014 Order or the Mass. 04/17/2014 Order, the matter has "played out". Innova asserts collateral estoppel and/or issue preclusion requires that the Proveris Claim be rejected in its entirety. Nevertheless, at the November 3 Hearing, counsel indicated, while making it abundantly clear that the chance is extremely remote, Proveris might be able to prevail on appeal.

Proveris concedes that, as it had at the commencement of this bankruptcy case, it currently holds nothing more than a contingent, unliquidated claim. Nevertheless, the heart of Proveris's opposition to the Objection and Cross-Motion is that despite the findings of PTO, PTAB and the Mass District Court, Proveris still owns a valid patent until all appeals have been exhausted and the patent is cancelled. If it ultimately prevails, it avers that its claims against Innova will stand. Therefore, Proveris argues that it will be irrevocably prejudiced if the court does not estimate and temporarily allow its claim for plan voting purposes. Proveris urges the court to consider the Sanctions has the appropriate amount for claim estimation.

III. **DISCUSSION**

A. **Innova's Objection to the Proveris Claim**

Innova stresses that, at the present time, the Proveris Claim has been liquidated to zero dollars as reflected by: (i) the January 13, 2014 judgment of the Federal Circuit; (ii) the January 31, 2014 decision of the PTAB that Claims 3-13 of the '400 Patent are invalid; and (iii) the Mass. 02/07/2014 Order (dissolving the permanent injunction) and the Mass. 04/17/2014 Order (providing that, if the claims of the '400 Patent are ultimately found to be invalid, they are invalid *ab initio* and cannot be the basis of an enforceable judgment or injunction).

In making its argument, Innova relies on the doctrine of collateral estoppel or issue preclusion. "Under the doctrine of issue preclusion, also referred to as collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Metropolitan Edison Co. v. Pennsylvania Public Utility Com'n*, 767 F.3d 335, 350 (3d Cir. 2014) (citation omitted). Moreover,

> [i]t applies, however, only if: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *In re Graham,* 973 F.2d 1089, 1097 (3d Cir. 1992) (citations omitted).

*Anderson v. C.I.R.*, 698 F.3d 160, 164 (3d Cir. 2012). Without a doubt, the facts presented show that at this juncture elements 1, 2 and 4 of the test are satisfied. However, the court finds that Innova's argument fails at element 3.

In support of its argument that element 3 of the test is satisfied, Innova argues that the exhaustion of appellate remedies is not a requirement of collateral estoppel. While this may arguably be true in matters where judgments are issued by courts, it appears to this court, in matters involving patent infringement, that final appeals must be exhausted before element 3 of the collateral estoppel test can be satisfied. *See* 35 U.S.C. § 318(b)[1] (requiring the issuance and publication of a certificate canceling any claim of patent finally determined to be unpatentable after the PTAB issues a final written decision and expiration of appeal period). *See also Frensenius USA, Inc. v. Baxter Intern., Inc.* 721 F.3d 1330, 1339-1341 (Fed. Cir. 2013) and *Bettcher Industries, Inc. v. Bunzl USA, Inc*., 661 F.3d 629. 648 (Fed. Cir. 2011). Here, while the PTAB issued a final written decision, the appeal period has admittedly not expired and the Director has not issued and published a certificate canceling any claim of patent finally determined to be unpatentable.

In addition, the circumstances of this case warrant a finding that element 3 of the test has not been satisfied. First and foremost, it cannot be disputed that the bankruptcy court entered an order granting Proveris relief from the automatic stay to liquidate its claim in the Mass. District Court, <u>including any appeals to the Federal Circuit</u> related thereto. Innova has now obtained a favorable ruling. Proveris has stated its intention to exhaust all appeals. It is simply absurd to conclude in light of the bankruptcy court's previous order, which contemplated a full and final resolution of claims, that the claim of Proveris has now been fixed by a final valid judgment.

More importantly, the Mass District Court through the Mass. 04/17/2014 Order, and at the suggestion of Innova, stayed the matter until the *<u>final conclusion of the reexamination process</u>*. Thus, it is clear that the Mass District Court itself does not consider the matter finalized until all appeals are exhausted. In addition, it cannot be seriously argued that the Mass District Court actually ruled that the claims are invalid *ab initio*. That court recognized the need for the reexamination process to come to its final conclusion before coming to that conclusion. The fact remains that until there is a final determination, the patent claims are valid. It is disingenuous for Innova to now suggest that collateral estoppel applies.

---

[1] **§ 318. Decision of the Board**

**(a) Final written decision.**--If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

**(b) Certificate.**--If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

Finally, Innova's position is inconsistent with the doctrine of judicial estoppel.

> Judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from "playing 'fast and loose with the courts.'" *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir. 1953) (citation omitted). "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782.

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).

Here, Innova submitted itself to the patent process. It understood that any determination by the PTO, PTAB, Mass District Court, Federal Circuit or any other appropriate forum would have to be finalized. Innova's attempt, in light of a favorable non-final ruling, to circumvent the intent of the bankruptcy court's previous order granting Proveris relief from the automatic stay and ignore the Mass. 04/17/2014 Order appears to be playing fast and loose with the courts.

The court concludes that separately and together 35 U.S.C. § 318(b) requiring the issuance and publication of a certificate canceling any claim of patent finally determined to be unpatentable, the bankruptcy court's previous order granting Proveris relief from the automatic stay to exhaust all remedies, the Mass. 04/17/2014 Order and/or the fact that the patent is still pending until a final determination is made, warrant a finding that the matter has not been determined by a final and valid judgment. In consequence, Innova's Objection is overruled and the court instructs, consistent with the bankruptcy court's previous order, that the liquidation of the Proveris Claim for distribution purposes proceed in the appropriate patent litigation forum(s) other than this court. Proceeding to the final conclusion of the patent process will not unduly delay the administration of the bankruptcy case because it will result in a liquidation of the claim for distribution purposes.

**B.  Proveris's Cross-Motion for Claim Estimation**

Denial of the Objection does not constitute allowance of the Proveris Claim. Proveris concedes that at the commencement of this bankruptcy case it had, and now currently holds, nothing more than a contingent, unliquidated claim. Only allowed claims may vote on a chapter 11 plan. 11 U.S.C. § 1126(a). A claim for which a proof of claim is filed is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). Once objected to, the court, after notice and a hearing, shall determine the amount of the claim and allow it in such amount. 11 U.S.C. § 502(b). The court may estimate any contingent or unliquidated claim if the fixing or liquidation of that claim in another forum would unduly delay the administration of the case. 11 U.S.C. § 502(c). The court has determined that the Proveris Claim must be finally liquidated in the appropriate patent litigation forum(s). Accordingly, the court will examine the request of Proveris in its Cross-Motion to estimate its claim in the amount of the Sanctions pursuant to Fed. R. Bankr. P. 3018(a).

As an alternative to 11 U.S.C. § 502(a) – (c), Fed. R. Bankr. P. 3018(a) provides "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Whereas Section 502(c) mandates that a court estimate a claim when the fixing or liquidation would unduly delay the administration of the case, Rule 3018 permits the court to estimate a claim for purposes of plan voting only. *In re Rock Airport of Pittsburgh, LLC*, No. 09-23155-CMB, 2014 WL 3893359, at *7 (Bankr. W.D. Pa. Aug. 8, 2014). The Bankruptcy Code and Rules do not provide the courts with any guidance about how and when to temporarily allow a claim. *Pension Ben. Guar. Corp. v. Enron Corp.*, No. 04 Civ. 5499 (HB), 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004). Thus, temporary allowance is left to the discretion of the court. *Id. See also In re Frascella Enterprises, Inc.,* 360 B.R. 435, 458 (Bankr. E.D.PA. 2007) (when estimating a claim under Fed. R. Bankr. P. 3018(a), the court looked to the Third Circuit's guidance in *Bittner v. Borne Chemical Company,* 691 F.2d 134 (3d Cir.1982)). There is no particular method to be employed in estimating a claim. *Bittner* 691 F.2d 135 (acknowledging that estimation decisions are matters best made by the bankruptcy judges "using whatever method is best suited to the particular contingencies at issue"); *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 356 (3d Cir. 2002) (following *Bittner*). Estimation decisions therefore fall within the discretion of the trial judge. *Id*

> In *Frascella Enterprises, Inc.,* 360 B.R. 435, the court noted that:
>
> A trier of fact first determines which version [of the facts] is most probable and proceeds from there to determine an award in a fixed amount. An estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all. *In re Ralph Lauren,* 197 B.R. 771, 775

(Bankr.S.D.N.Y.1996) ( *quoting In re Windsor Plumbing Supply Co., Inc.,* 170 B.R. 503, 521 (Bankr.E.D.N.Y.1994)) (alterations in original). The court makes no definitive findings but rather assesses the possibilities of the various contentions and applies the appropriate discount to reflect the uncertainties of the contingencies. However, in performing this task, the court is bound by the legal rules which govern the ultimate value of the claim. *Id. See also In re Brints Cotton Marketing, Inc.,* 737 F.2d 1338, 1341 (5th Cir.1984); *Bittner, supra.*

360 B.R. at 458.

In this case, after the submission of thorough pleadings by the parties, the court conducted the November 3 Hearing. Both bankruptcy counsel and counsel intimately familiar with the patent litigation were present and made their arguments. The undisputed facts are set forth in detail above. For its analysis, the court will simplify the relevant facts.

It is undisputed the Mass. District Court entered final judgment of infringement and issued a permanent injunction barring Innova from infringement of the ′400 patent. Subsequent thereto, Proveris pursued contempt proceedings against Innova and the Mass. District Court conducted a bench trial and awarded the Sanctions. Ultimately, on appeal, the Federal Circuit entered judgment, vacating the finding of contempt and the Sanctions by the Mass. District Court, and remanded the matter back to the Mass. District Court for further proceedings. In February 2014, the Mass. District Court dissolved the permanent injunction and issued an order setting a briefing schedule on the issue of whether Proveris has any viable legal theory to seek sanctions for contempt. In response, Proveris filed a Motion for Contempt Action and to Reinstate Permanent Injunction and Innova responded. On April 17, 2014, the Mass. District Court entered an order in connection therewith finding in essence that until final appeals are exhausted, it can take no further action. In doing so, the Mass. District Court acknowledged that "If the claims of the ′400 Patent are ultimately found to be invalid, they are invalid ab initio and cannot be the basis of an enforceable judgment of injunction." Mass. 04/17/2014 Order. Accordingly, at this point, the only basis on which to estimate the Proveris Claim, i.e., the order of contempt and Sanctions, no longer exists. While the Mass. District Court indicated that it would revisit the issue if Proveris ultimately prevailed, the fact is that presently any contempt and Sanctions have been vacated. In short, no claim or, at this time, even a basis for a claim exists.

To further support this determination, the court looks to matters before the PTO. The PTO issued the PTO Order and in response thereto, Proveris submitted its Amendment and a Petition. After considering the Amendment, the PTO issued an "Action Closing Prosecution" in which all rejections of the previous claims were upheld, new rejections of the new claims were added/adopted, and Proveris's arguments were rebutted. The PTO also dismissed the Petition. Proveris filed a Notice of Appeal to the PTAB and on January 31, 2014, the PTAB affirmed the decision of the PTO. On February 28, 2014, Proveris filed a Request for Rehearing to reconsider the decision. In November 2014, the PTAB issued its final Decision on Rehearing denying Proveris' Request for Rehearing finding Proveris's arguments unpersuasive.

As it stands, there are no Sanctions, and Proveris has lost on every level of the appeal process so far. Based upon the history, it is not unreasonable to conclude that Innova's version of the

facts is most probable and ultimately it, and not Proveris, will prevail. The court believes that the PTO and the PTAB are in a better position to determine the validity of Proveris's claims. Indeed, even the Mass. District Court acknowledged that it would be bound by the decision of those entities. Since those entities have rejected the claims of Proveris and at this time, no claim exists, the Proveris Claim is a claim whose contingency may never occur. Moreover, Proveris's ultimately prevailing on its claims, in light of its lack of success at the appellate level, is uncertain at best. Consequently, this court concludes that the claim of Proveris must be estimated at $0 pursuant to Fed. R. Bankr. P. 3018(a).

This all or nothing approach to claim estimation is supported by the Third Circuit in *Bittner* where it found that the bankruptcy court did not abuse its discretion when it applied an all or nothing approach to estimating a claim instead of considering the claimant's probability of success. *Bittner*, 691 F.2d at 136. The *Bittner* court explained:

> By valuing the ultimate merits of the Rolfite stockholders' claims at zero, and temporarily disallowing them until the final resolution of the state action, the bankruptcy court avoided the possibility of a protracted and inequitable reorganization proceeding while ensuring that Borne will be responsible to pay a dividend on the claims in the event that the state court decides in the Rolfite stockholders' favor. Such a solution is consistent with the Chapter 11 concerns of speed and simplicity but does not deprive the Rolfite stockholders of the right to recover on their contingent claims against Borne.

*Id.* at 137 (footnotes omitted). The *Bittner* court continued:

> The court's ultimate finding of fact-that the Rolfite stockholder' claims in the reorganization proceeding were worth zero-must also be upheld since it too is not clearly erroneous. The subsidiary findings of the court plainly indicated that the Rolfite counterclaim in the state action lacked legal merit. Faced with only the remote possibility that the state court would find otherwise, the bankruptcy court correctly valued the claims at zero. On the basis of the court's subsidiary findings, such an estimation was consistent both with the claims' present value and with the court's assessment of the ultimate merits.

*Id.* at 139; *see also In re Kaplan*, 186 B.R. 871, 874 (Bankr. D.N.J. 1995) (stating that "[i]t is not inappropriate to value a party's claim at zero where the claim is contingent and where the bankruptcy court finds that the party probably would not succeed on the merits in a state court action" and stating that "[a]s recognized by the Third Circuit in *Bittner,* the estimation process protects the interests of other creditors in not having their distributions diminished by allowing a claim whose contingency may never occur").

In addition, estimating the claim at $0 is consistent with the promotion of the reorganization process as contemplated by the Third Circuit in *Bittner*. To estimate at the Sanctions amount as Proveris suggests would allow it to control confirmation, a position not in line with the policies of reorganization. *Bittner*, 691 F.2d at 137. For example, in *In re J.C. Householder Land Trust #1*, 502 B.R. 602, 606 (Bankr. M.D. Fla. 2013), the court refused to allow the holder of a

crammed-down secured claim, who purchased an unsecured claim whose holder had previously voted in favor of the plan, to change the unsecured claim's vote to one against the plan, as that would block confirmation. The court explained that "[i]n order to promote consensual negotiating and fair bargaining, the Code attempts to balance the powers and limitations of debtors and creditors alike." *Id.*, at 607. In addition, the voting requirements for plan confirmation were drafted with the goal of obtaining good-faith negotiation between the debtor and its creditors toward the ideal of a consensual plan. *Id.* Allowing this one creditor to purchase a claim to then block confirmation would defeat both goals and shift the balance of power to one creditor. *Id. See also In re Jones*, 32 B.R. 951, 953 (Bankr. D. Utah 1983) (stating that chapter 11 is intended to be less adversarial, more "controlled negotiation").

A $0 estimation also comports with *Matter of Gardinier, Inc.*, 55 B.R. 601 (Bankr. M.D. Fla. 1985), where the court similarly indicated that it would eventually allow the claim in the amount determined by the outside litigation, but "disallowed" it under Rule 3018 for the purpose of plan voting. The court considered that the potential size of the claim could allow the creditor to exert undue influence with other creditors in its class under the plan and thus "scuttle" the proceeding. There, as here, the debtor was setting aside funds to pay the creditor if it were finally allowed, and the court believed that any delay in confirmation would be fatal to the reorganization. *Id.*, at 604-05. *See also In re Am. Solar King Corp.*, 90 B.R. 808, 826-27 (Bankr. W.D. Tex. 1988) (noting that notice and a hearing under Rule 3018 were not necessary when a creditor agreed to change its vote after negotiation with the debtor; the Code seeks to "foster consensus"). The court's $0 estimation, while the only value the court finds supported at this time, also facilitates the reorganization process by moving this case forward to plan confirmation.

### C. Irrevocable Prejudice to Proveris

In its argument, Proveris alleged that it would be irrevocably prejudiced if the court did not estimate its claim for the amount of the Sanctions thereby depriving it of its chance to vote on Innova's plan. Though estimating Proveris's claim at $0 prevents it from voting on the plan, it does not prevent it from objecting to the plan, to the extent it has standing under that term's usual meaning and under the Code. As explained by the Third Circuit Court of Appeals,

> To object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution. *See Danvers,* 432 F.3d at 290-91. A party seeking constitutional standing must demonstrate an "injury in fact" that is "concrete", "distinct and palpable", and "actual or imminent." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L.Ed.2d 135 (1990). Additionally, the party must establish that the injury "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Id.* (internal quotations omitted). We have noted that "[t]he contours of the injury-in-fact requirement, while not precisely defined, are very generous." *Bowman v.*

> *Wilson,* 672 F.2d 1145, 1151 (3d Cir. 1982). The standard is met as long as the party alleges a "specific, 'identifiable trifle' of injury," *id.* (quoting *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 686–90, 690 n. 14, 93 S. Ct. 2405, 37 L.Ed.2d 254 (1973)), or a "personal stake in the outcome of [the] litigation," *The Pitt News v. Fisher,* 215 F.3d 354, 360 (3d Cir.2000). *See In re Congoleum Corp.,* 426 F.3d 675, 685 (3d Cir.2005) ("Article III standing need not be financial and only need be fairly traceable to the alleged illegal action.").
>
> Standing in bankruptcy cases is also governed by the terms of 11 U.S.C. § 1109(b), which provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The list of potential parties in interest in § 1109(b) is not exclusive. On the contrary, that section "has been construed to create a broad right of participation in Chapter 11 cases." *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 214 n. 21 (3d Cir. 2004). The United States Court of Appeals for the Seventh Circuit has described a party in interest as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re James Wilson Associates,* 965 F.2d 160, 169 (7th Cir. 1992). That "party in interest" test comports with our own definition of a "party in interest" as one who "has a sufficient stake in the proceeding so as to require representation." *In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir. 1985). We thus adopt the test set forth by the Seventh Circuit in *James Wilson* as a helpful amplification of our definition in *Amatex.* Status as a party in interest is of particular relevance here because the Bankruptcy Code expressly provides that parties in interest "may object to confirmation of a plan." 11 U.S.C. § 1128(b).

*In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 210-11 (3d Cir. 2011). *See also In re Gulf States Long Term Acute Care of Covington, LLC*, 487 B.R. 713, 726 (Bankr. E.D. La. 2013) (stating that a party in interest has standing to object to confirmation of a plan).   Moreover, estimating the claim at $0 does not affect Proveris's standing to object to the plan, as the estimation is only for voting purposes, it does not necessarily disallow the claim.  *See generally In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202, 222 (Bankr. W.D. Tex. 2008), *aff'd*, 632 F.3d 168 (5th Cir. 2011).

Proveris is affected by the plan as a member of the unsecured class of creditors that may be paid under the plan. The current plan provides for setting aside funds to pay Proveris should it prevail in the patent litigation, thus it has a stake in the outcome of the plan confirmation process. Additionally, Proveris may be heard on any of the section 1129(a) requirements for confirmation that this court must consider in deciding whether to confirm the plan.

### D. Amended Disclosure Statement

In light of the court's ruling and the November 2014 decision of the PTAB, Innova shall file an amended Disclosure Statement and Plan with a hearing date on the Disclosure Statement returnable in January 2015. The court expects the amended Disclosure Statement and Plan to also address the potential impact of Proveris ultimately prevailing on its claims in the patent litigation.

### IV. CONCLUSION

Based on the foregoing, the Objection is denied and the Cross-Motion is granted allowing the claim of Proveris to be estimated at $0. Counsel for Innova is directed to submit a form of order consistent with the court's findings.